## DeWitt H. Curtis, Executor, v. A. B. Meeker, Frank W. Tracy and Charles A. Starne.

1. ESTOPPEL—*To Deny Corporate Existence.*—A person who elects to deal with a *de facto* corporation, and derives benefit therefrom, should be precluded from afterward questioning its corporate character.

2. SAME—*Binds Personal Representatives.*—If a person in his life estopped himself from denying the corporate character of a *de facto* corporation with reference to certain acts, his personal representatives will also be estopped as to the same acts after his death.

3. CORPORATIONS—*Before Organization Completed—De facto.*—A corporation which has completed its organization, except the filing of its final certificate of organization for record in the county where its principal office is located, is a corporation *de facto*, and its stockholders and directors are estopped from questioning its existence as a corporation.

**Assumpsit,** on promissory notes. Appeal from the Superior Court of Cook County; the Hon. JAMES GOGGIN, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed January 22, 1896.

E. A. SHERBURNE, attorney for appellant.

CHARLES E. POPE, attorney for A. B. Meeker, appellee, contended that the only question presented in this cause is, as to whether or not one dealing in, and taking corporate paper secured by a corporate mortgage, under the seal of a corporation, with full knowledge of all these facts, and who also is a stockholder and director in such corporation, can question its existence.

The question is: Did C. H. Curtis, with full knowledge of the existence of the corporation, do anything which estops the plaintiff in error from questioning the existence of the corporation under the facts shown in evidence?

The cases of Bushnell v. Consolidated & M. Co., 138 Ill. 157; Tarbell v. Page, 24 Ill. 46; Cross v. Pinckneyville Mill Co., 17 Ill. 54; Baker v. Backus, 32 Ill. 79; School Directors v. School Directors, 135 Ill. 464–7; Am. L. S. Com. Co. v. C. L. S. Ex., 41 Ill. App. 151, settles the question.

ULLMANN & HACKER, attorneys for Frank W. Tracy, appellee.

From the facts, it clearly appears that there was an honest attempt by the incorporators to organize a corporation authorized by the laws of this State. The necessary steps to perfect that organization were all taken as required by

the statute, except that the final certificate was not recorded. It is shown that upon the issuing of that certificate its directors elected the proper officers, and proceeded to the transaction of business as a corporation, and continued to act as such until the filing of this bill, a period of more than five years. That these facts established a corporation *de facto* is settled by numerous decisions of this court. President and Trustees, etc., v. Thompson, 20 Ill. 198; Rice v. R. I. & A. R. R. Co., 21 Ill. 93; Baker et al. v. Administrator, 32 Ill. 70; Rumsey v. Marine & Fire Ins. Co., 55 Ill. 311; Cincinnati, L. & C. R. R. Co. v. D. & V. R. R. Co., 75 Ill. 113; Louisville, New Albany & Chicago Ry. v. Shires, 108 Ill. 617; Hudson v. Green Hill Seminary Corporation, 113 Ill. 618.

The general rule is that one who deals with a corporation as existing *de facto*, is estopped to deny as against it, that it has been legally organized.

The legal existence of a corporation *de facto* can not be questioned collaterally. Cresswell v. Oberly, 17 Ill. App. 281; Renwick v. Hall et al., 84 Ill. 162; The People ex rel. v. Trustees of Schools, 111 Ill. 171; Keigwin et al. v. Drainage Comrs., 115 Ill. 347.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT

The appellees were sued as copartners, doing business under the firm name of The Central Illinois Coal Company, upon four certain promissory notes, aggregating the principal sum of $20,000, executed in the name of Central Illinois Coal Co., and all bearing date at Chicago, April 16, 1884.

Two of said notes, aggregating $10,000, were payable twelve months after date to the order of the First National Bank of Springfield, Illinois, and were indorsed in blank, without recourse, by said bank. Two other of said notes, aggregating $10,000, were payable six months after date to the order of Tracy, Beekman & Co., and were indorsed in blank, without recourse, by said payees.

The facts, either proved or agreed upon, are that, in pur-

suance of a duly issued license by the secretary of state for Illinois, the appellees subscribed for all of the shares of stock in the proposed corporation, known as the Central Illinois Coal Company, and were elected its first board of directors on June 29, 1883, and that a certificate by said secretary of state was issued June 30, 1883, declaring that said company was a legally organized corporation. Such certificate was not, however, filed for record in the recorder's office of Cook county, which was the county in which was located the principal office of the corporation, until June 5, 1885.

The appellee, Tracy, was president of the said bank and a member of the said firm of Tracy, Beekman & Co., and, as such, and acting for said payees, sold said notes to Charles H. Curtis, since deceased, whose executor the appellant is, and in his own handwriting made said indorsements on the notes.

Said sale and indorsements were made about October 16, 1884, which was, as will be observed, about the date of the maturity of the two notes payable at six months.

On the day of the date of all of said notes the appellee Tracy sold out all his interest in the said company to the appellees Meeker and Starne, and, if it be at all material to mention it, was released from all liability as such subscriber to the capital stock of said company, by resolutions of its board of directors.

Said Charles H. Curtis presided at a meeting of the shareholders of said company held October 22, 1884, and voted thereat on ten shares of stock as a shareholder, and was then elected a director of said company.

At a directors' meeting held subsequent to the said stockholders' meeting, but on the same day, Curtis was present as a director, and it was voted at said directors' meeting to deliver to said Curtis $20,000 in bonds and 400 shares of the capital stock of the company as collateral to the mortgage of the company made April 16, 1884, to James H. Matheny, Jr., he (Curtis) having purchased the same, as recited in the recorded proceedings of that directors' meeting.

The mortgage to Matheny, so referred to, was one that was given to secure the notes sued on in this case.

The bonds so voted to Curtis were twenty in number, of $1,000 each, and were dated May 1, 1884, and were secured by a trust mortgage executed by said corporation on all its property, and said stock was evidenced by four certificates for 100 shares each, running to Curtis, dated the date of said directors' meeting, October 22, 1884; and it was admitted that appellant, as executor of the estate of said Curtis, held said bonds and stock, at the time of the trial below, as collateral to the notes in suit.

Upon the foregoing facts the Superior Court found the law against the plaintiff, the appellant here, and gave judgment against him. This appeal is from that judgment.

We think the judgment was right.

The coal company was a *de facto* corporation, and under the established facts it seems to be clear that Charles H. Curtis estopped himself from questioning its existence as a corporation. It does not appear when he first became a stockholder, whether before the notes were made or not. It was admitted on the trial that the notes were secured by a chattel mortgage to Matheny bearing even date with them, duly acknowledged and recorded and executed in the corporate name of the coal company by its vice-president and secretary, and bearing a corporate seal purporting to be that of the company; and on the face of the notes themselves they purport to be executed by the corporation, by its secretary.

Of all these matters Curtis had notice, by inspection of the papers themselves, or opportunity for so doing, at the time the notes were sold to him. Moreover, he accepted the position of director of the corporation within a very few days, at most, after he bought the notes, and received from the corporation on that same day, under a vote of the directors at a meeting in which he participated as a director, other corporate bonds and stock of the corporation of large representative value, and bearing all the usual evidences of corporate action, as collateral to the notes and chattel mortgage

of the corporation he had bought from Tracy.  Herein, it seems to us, was a complete ratification by himself, for his own advantage and benefit, of all of the said corporate acts, and he should be held to be estopped from denying the existence of the corporation, with reference to any of said corporate acts.   One who so elects to deal with a *de facto* corporation and derive benefit therefrom, should be precluded from afterward questioning its corporate character.   It is not pretended that there is in the case any element of fraud or misrepresentation, or of unfair dealing, either by the corporation or by any of the appellees.

It is clear enough that everybody then connected with the corporation, including Mr. Curtis, supposed and believed that the corporation had not only a *de facto* existence, but one *de jure* also, and that they acted upon that belief and reliance.   A more binding recognition or admission of the corporate character of the coal company could scarcely be made, unless by admission through the solemn form of the judgment of a court by their own procurement.

Had the corporation been sued as such, during the time that Mr. Curtis lived and was a director, by one who had dealt with it on the faith of its being a corporation, neither Mr. Curtis, as such director, alone, nor in conjunction with all the other directors, would have been permitted to plead, denying it was a corporation.   And no more should his representative now be heard to deny its corporate character.

And it is not an answer to these propositions to say, as appellant does, that the liability of the defendants was fixed at the time the notes were made, and that the subsequent acts of Mr. Curtis did not release them from such liability.

It is not so much the question of the liability of the defendants, as it is of the estoppel of Mr. Curtis, that is involved, and that, we think, is most clearly demonstrated by the facts of the case.   It is not material who was liable on the notes at the making of them, if Curtis, at the time of buying them, or subsequently, estopped himself by his conduct from afterward denying that they were the notes of the corporation.   The law applicable to negotiable paper

does not necessarily preclude one dealing with it from the operation of the doctrine of estoppel.

The point of Loverin v. McLaughlin, 46 Ill. App. 373, still undetermined upon appeal to the Supreme Court, is not involved here, but the cases of Cresswell v. Oberley, 17 Ill. App. 281, Tarbell v. Page, 24 Ill. 46, and Bushnell v. Consolidated Ice Machine Co., 138 Ill. 67, are instructive as applied to the facts here.

We may advert to one other reason why the judgment should be affirmed.

We regard it as sufficiently shown, by inference at least, that the appellee Tracy sold out all his interest in the corporation or partnership firm, whichever it was, before the notes in question were given.

His defense to the notes, as declared upon, would therefore have been ample, and appellant, to have proceeded, should have amended his declaration.

A judgment, under the declaration as it is, must have been against all or none of the appellees.

The judgment of the Superior Court is affirmed.